IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL CURRY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CRIMINAL NO. 15-0137-WS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER**

This matter comes before the Court on petitioner Samuel Curry's *pro se* filing which is styled as a "Motion/Petition for Compassionate Release/Relief Pursuant to § 3582" (doc. 99).

The court file reflects that, after a jury trial, Curry was convicted of one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On February 12, 2016, this Court sentenced Curry to a term of imprisonment of 84 months. According to Bureau of Prisons records, Curry has slightly more than one year left to serve on that sentence, with a projected release date of October 14, 2021. He is presently incarcerated at FCI Yazoo City Medium, a medium-security facility in Yazoo City, Mississippi.

Curry is one of numerous defendants who has petitioned this Court for compassionate release or modification of sentence based on the effects of the COVID-19 pandemic. In his Motion, filed *pro se*, Curry would apparently invoke 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act enacted in December 2018. That section allows a defendant to petition the Court directly for reduction of a term of imprisonment for "extraordinary and compelling reasons," without a motion by the Director of the Bureau of Prisons ("BOP"), after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A). Curry explains that he made formal electronic requests for compassionate release to both his Case Manager and the Warden of FCI Yazoo City Medium back in March 2020, but that prison officials never granted him relief on those requests. Although Curry does not provide copies of those electronic communications as exhibits to his

Motion, he explains that they are unavailable to him at this time because email transmissions more than 60 days old are automatically removed from the electronic messaging system provided for the inmate population, and he has been unable to retrieve them otherwise because of lockdown conditions at that facility.  The Court assumes, without deciding, that Curry has made an adequate showing that he requested compassionate release from the prison warden more than 30 days before he filed his Motion, such that he is authorized by the amended version of the statute to request judicial modification of his term of imprisonment on the ground that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).

That said, the statute is clear that any such reduction of a sentence for "extraordinary and compelling reasons" must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's applicable policy statement, set forth at Application Note 1 to the Commentary of § 1B1.13 of the Federal Sentencing Guidelines, defines "extraordinary and compelling reasons" justifying sentence reduction as including (i) the defendant's serious medical condition diminishing his ability to provide self-care within the environment of a correctional facility; (ii) the advanced age of the defendant; (iii) family circumstances such as death or incapacitation of the caregiver of the defendant's minor children; and (iv) other reasons "[a]s determined by the Director of the Bureau of Prisons."  *Id.*  Curry's Motion does not implicate the first three categories of extraordinary and compelling reasons;[1] therefore, his request would appear to rise or fall on the fourth ground identified by the Sentencing Commission.

The BOP's Program Statement 5050.50 identifies in some detail the types of reasons that the Director of the BOP deems "extraordinary and compelling" within the fourth prong of the Sentencing Commission's policy statement.  Nothing in PS 5050.50 reflects a determination by the BOP that compassionate release may be appropriate based on an inmate's generalized fear of contracting COVID-19 in prison.  As such, Curry is effectively urging this Court to find that his circumstances constitute an "extraordinary and compelling reason" for § 3582(c)(1)(A) relief, even though doing so would <u>not</u> be within the scope of reasons determined by the BOP to be extraordinary and compelling and therefore would <u>not</u> be consistent with the Sentencing

---

[1] To be sure, Curry indicates that he suffers from certain chronic health conditions. However, he makes no showing that these conditions presently diminish his ability to provide self-care in a prison environment.

Commission's applicable policy statement.  Simply put, then, Curry's Motion would have this Court ignore statutory language requiring that sentence reductions for "extraordinary and compelling reasons" be consistent with Sentencing Commission policy statements by essentially superimposing the Court's own policy preferences over those of the Sentencing Commission and the Bureau of Prisons.  This Court has previously declined to do so.  *See United States v. Lynn*, 2019 WL 3805349, *4 (S.D. Ala. Aug. 13, 2019) ("Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version.  Until that day, however, the Court must follow the policy statement as it stands.").  It reaches the same conclusion today for the same reasons set forth in *Lynn*.

Even assuming this Court were empowered now to make determinations of "extraordinary and compelling reasons" in addition to those specified in U.S.S.C. § 1B1.13 and PS 5050.50, the undersigned would not find that the circumstances described by Curry meet that high standard for compassionate release.  To understand why, it is helpful to examine § 12003(b)(2) of the CARES Act, which granted the Attorney General authority to lengthen the maximum amount of time for which the BOP is authorized to place a prisoner in home confinement beyond the limits imposed by 18 U.S.C. § 3624(c)(2).[2]  In exercising this authority, the Attorney General has issued Memoranda to the Director of the BOP dated March 26, 2020 and April 3, 2020.  Among other things, those Memoranda enumerate criteria for inmates to be eligible for home confinement.  Those discretionary factors include, without limitation, the following: (i) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines; (ii) the security level of the facility, with priority given to inmates residing in low and minimum security facilities; (iii) the inmate's conduct in prison; (iv) the inmate's score under PATTERN, with inmates scoring above the minimum score not receiving priority treatment; (v) whether the inmate has a demonstrated, verifiable re-entry plan that will prevent recidivism and maximize public safety; and (vi) the seriousness and severity of the inmate's crime of conviction and danger posed by the inmate to the community.  The Attorney General also directed the BOP

---

[2] Curry has specifically requested both early release and the ability to serve the remainder of his sentence under home confinement.  The factors that are relevant in the home confinement inquiry are also helpful in analyzing whether a defendant should be granted early release under the First Step Act because of COVID-19 related concerns.

to maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where significant levels of COVID-19 infection are materially affecting operations.

Many of the non-exhaustive factors listed in the Attorney General's Memoranda do not favor home confinement or early release in this case. Curry is 42 years old, so he is not of an advanced age that might heighten his risk of contracting COVID-19. Additionally, prison records furnished by Curry reflect that, as of March 17, 2020, "Inmate Curry is Care 1 Medical" with "healthy or simple chronic care," and was assigned regular duty with no medical restrictions. (Doc. 99, PageID.935.) As a matter of BOP classifications, Medical Care Level 1 is used for inmates who are "generally healthy, under 70 years of age, and may have limited medical needs [such as mild asthma or diet-controlled diabetes] requiring clinician evaluation and monitoring."[3] Moreover, Curry's Presentence Investigation Report filed on January 19, 2016 reflects as follows: "The defendant stated that he enjoys good physical health, and is prescribed no medication. Curry advised that he has never been hospitalized for any serious illness, or injury." (Doc. 49, ¶ 48, PageID.148.) All information before the Court suggests that Curry does not suffer from any medical conditions that would place him at a heightened risk of contracting COVID-19.[4] Further, there is no indication and no reason to believe that an outbreak of coronavirus is currently happening, or is likely to happen, at FCI Yazoo City Medium. According to current data reported by the BOP, only one inmate (of the total population of approximately 1,300) housed at that facility has a current positive COVID-19 test. Also

---

[3]   See Federal Bureau of Prisons, U.S. Department of Justice, *Legal Resource Guide to the Federal Bureau of Prisons 2014*, at 25 http://www.bop.gov/resources/pdfs/legal_guide.pdf (*retrieved* September 28, 2020).

[4]   To be sure, Curry states in his petition that he is in a "High Risk Category" for COVID-19 because he suffers from "breathing difficulties relating to asthma," "severe allergies," and "high blood pressure condition." (Doc. 99, PageID.924-25.) But the medical records he submits do not substantiate this characterization of Curry's overall health. At best, Curry presents a "Clinical Encounter" form dated August 3, 2018, reflecting that (i) Curry has hypertension, controlled with medication from which he suffers no side effects; (ii) Curry has asthma, but "is doing well," "has never ben intubated and has not been hospitalized in the past," and suffers from "no nocturnal symptoms, cough, excessive daytime wheezing or exercise intolerance;" (iii) Curry has occasional migraine headaches; and (iv) Curry has high cholesterol. (Doc. 100, PageID.943.) Curry does not indicate that he has ever received medical treatment in prison for any of these enumerated conditions following the August 2018 Clinical Encounter.

-5-

weighing against granting compassionate release is the fact that Curry is housed in a medium-security facility, not a low- or minimum-security facility.

After considering all of the relevant circumstances and information presented, the Court concludes that Curry has made no showing of the sort of "extraordinary and compelling reasons" contemplated by 18 U.S.C. § 3582(c)(1)(A)(i) that might warrant the discretionary exercise of any First Step Act authority for compassionate release, sentence modification, or release to home confinement to protect him from risks of contracting the COVID-19 virus in prison. Accordingly, Curry's Motion for Compassionate Release (doc. 99) is **denied**.

DONE and ORDERED this 29th day of September, 2020.

                                              s/ WILLIAM H. STEELE
                                              UNITED STATES DISTRICT JUDGE